UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

NATHAN E. BROOKS,  )
    *Plaintiff*,  )
      )
v.  )    No. 1:24-cv-00378-CEA-CHS
      )
JOE SMITH, *et. al.*,  )
    *Defendants*.  )

### REPORT AND RECOMMENDATION

**I.    Introduction**

Nathan Brooks, pro se, is proceeding in forma pauperis [Doc. 1]. This Court is responsible for screening all actions filed by plaintiffs proceeding in forma pauperis and for dismissing any action or portion thereof which is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). In addition, "federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998).

**II.    Standard of Review**

Under 28 U.S.C. § 1915(e)(2), the Court must screen all actions filed by plaintiffs proceeding *in forma pauperis* and dismiss any action or portion thereof which is frivolous or malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds, Jones v. Bock*, 549 U.S. 199 (2007). This obligation remains even where some or all of the filing fee has been paid by or assessed against the plaintiff. 28 U.S.C. § 1915(e)(2); *see also In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131 (6th Cir. 1997) ("All

1

prisoners while incarcerated must now pay the required filing fees and costs. When an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs.").

Generally, the standard to state a claim under 28 U.S.C. § 1915(e)(2) is the same as that required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). In determining whether the plaintiff has stated a claim upon which relief may be granted, the Court accepts all well-pleaded factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 555 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 569–70). Additionally, *pro se* pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. Factual Allegations

Plaintiff filed the present action on December 3, 2024 [Doc. 2]. Plaintiff's claims arise from an incident at the Hamilton County Jail wherein he alleges he was denied the ability to celebrate Holy Communion with the prisoners [*Id.* at 4]. Plaintiff asserts a claim under 42 U.S.C. § 1983 for denial of his free exercise of religion under the First Amendment, and names as defendants: (1) Joe Smith in his individual capacity; (2) Joe Smith as an agent of Hamilton County; (3) Chaplain Jones in his individual capacity; (4) Chaplain Jones as an agent of Hamilton County; (5) Hamilton County; (6) Hamilton County Sheriff's Department; and (7) Sheriff Austin Garrett [*Id.* at 15]. According to Plaintiff, Joe Smith performs workhouse prison ministry; Sheriff Garrett is the Head

Sheriff in Hamilton County; and Chaplain Jones is a chaplain at the Hamilton County Jail [*Id.* at 10–11, 13]. Plaintiff also asserts claims under 42 U.S.C. § 2000cc for violations under the Religious Land Use Act, and 18 U.S.C. § 242 for deprivation of rights under color of law [*Id.*]. Plaintiff brings these claims on behalf of the prisoners[1] in the Hamilton County Jail [*Id.*].

Plaintiff states that Defendants denied the prisoners and himself the sacrament of Holy Communion and Anointment for Healing and Deliverance [*Id.* at 3–4]. By way of background, Plaintiff states that from 2009 until 2020, he visited the Hamilton County Jail to celebrate Holy Communion and Anointing for Healing [*Id.* at 4]. However, in 2020, jail operations were moved to Silverdale[2] [*Id.*]. When Plaintiff called then-current Chaplain Waters to ask for instructions on how to proceed with administering Communion at the new location, Waters advised him that he could not because the jail did not have a chapel [*Id.*]. Plaintiff lists a number of prisoners who were denied access to Holy Communion and Anointment including Jessie Matthews, Richard Manning, and Jaime Zarate [*Id.* at 5]. He also claims that he could not "administer the bread of Holy Communion to prisoners through their cell bars when they were unable to attend the service with a group of prisoners." [*Id.*].

Plaintiff claims he was prevented from engaging in ministry during the Covid-19 pandemic [*Id.* at 10]. In April 2024, Plaintiff wrote to Sheriff Garrett, inquiring about whether he could return to the jail to engage in ministry, and Garrett did not respond [*Id.* at 10–11]. Plaintiff then spoke to Joe Smith (who performed prison ministry at Silverdale), who told Plaintiff that he could not

---

[1] For clarity, the Court will refer to Nathan Brooks as "Plaintiff." When the Court refers to claims on behalf of the prisoners, the Court will refer to them as "the prisoners."

[2] During the referenced time period from 2009 to 2020, the Hamilton County Jail was located in downtown Chattanooga, while Corrections Corporation of America (later "CoreCivic") operated the Silverdale Detention Center located at 7609 Standifer Gap Road in Chattanooga. In or around 2020, Hamilton County took over operations at the Silverdale Detention Center and ceased operations at the downtown jail. To distinguish between the two jails in this report and recommendation, the Court will refer to the Standifer Gap location as "Silverdale" or ("Silverdale Workhouse") even though the County now refers to it as the Hamilton County Jail.

administer Communion or participate in Anointing for Healing, but that Plaintiff could minister to the prisoners [*Id.* at 11–12]. Plaintiff next called Chaplain Jones, who told Plaintiff there was no place for Plaintiff to administer Communion [*Id.* at 13]. Plaintiff stated that he explained to Chaplain Jones over the phone that the prison website lists Holy Communion as a service for the prisoners, and Chaplain Jones hung up on him [*Id.*]. Plaintiff claims that Defendants were conspiring together to violate Plaintiff's and the prisoners' First Amendment rights. [*Id.* at 4–5].

Plaintiff requests this Court to certify a class action for all prisoners who have been denied the sacrament of Holy Communion, pursuant to Fed. R. Civ. P. 23 [*Id.* at 14]. He states that, while he cannot represent the class, he would like this Court to appoint a representative [*Id.*].

Finally, Plaintiff requests a preliminary injunction, a permanent injunction, class certification, $75,000 in compensatory damages, $900,000 in punitive damages, and a jury trial [*Id.* at 17].

### IV. Analysis

Construed in his favor, Plaintiff's allegations do not state a claim upon which relief can be granted. The claims on behalf of the prisoners fail because Plaintiff lacks standing to bring a claim on their behalf. The claims also cannot be brought as a class action under Fed. R. Civ. P. 23 because Plaintiff lacks standing to bring this action on behalf of the prisoners. Plaintiff's claims on his own behalf fail because he does not state a claim under the Free Exercise Clause. Plaintiff also fails to state a claim under the Religious Land Use and Institutionalized Person Act. Finally, Plaintiff cannot bring a claim under 18 U.S.C. § 242 because it is a criminal statute.

#### A. The Prisoners' Claims

Plaintiff attempts to sue Defendants on behalf of the prisoners, alleging that their First Amendment rights were violated when they were denied Communion. However, Plaintiff lacks

standing to sue on the prisoners' behalf. Here, Plaintiff attempts to sue as a putative next friend. However, to sue on a prisoner's behalf and establish standing, "a putative next friend must demonstrate that the prisoner is unable to prosecute the case on his own behalf due to inaccessibility, mental incompetence, or other disability and that the next friend is truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Tate v. United States*, 72 F. App'x 265, 266 (6th Cir. 2003) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990)) (internal quotation marks omitted). The burden is on the next friend to clearly establish his status and the jurisdiction of the court. *Whitmore*, 495 U.S. at 164.

The Court finds that Plaintiff does not qualify for next friend status. First, Plaintiff does not assert, or provide any evidence, that any of the prisoners are incompetent or otherwise incapable of pursuing this action on their own behalf. Second, Plaintiff does not demonstrate that he is truly dedicated to the prisoners' best interests. Even assuming Plaintiff is acting in the prisoners' best interests, the failure of Plaintiff to demonstrate that the prisoners are incompetent or not capable of bringing this action is fatal to his claim. Thus, Plaintiff does not have standing to bring this claim as next friend on behalf of the prisoners.

Plaintiff also cannot bring this claim as a class action for the prisoners because "[t]hreshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). Having found that Plaintiff lacks standing to bring this claim on the prisoners' behalf, it follows that the Court cannot certify a class action initiated by Plaintiff on the prisoners' behalf.

### B. Plaintiff's Claims

#### 1. Free Exercise Clause

Plaintiff asserts, via 42 U.S.C. § 1983, that he was denied his right to freely exercise his religion under the First Amendment. Section 1983 is a remedial statute which does not itself create independent substantive legal rights. Rather, Section 1983 simply provides a vehicle by which a person may recover damages for a violation of rights secured to him by federal law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). To state a claim under Section 1983, a plaintiff is required to show that he has been deprived of a right, privilege, or immunity secured to him by the United States Constitution or other federal law and that the defendants caused the deprivation while they were acting under color of state law. *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 441 (6th Cir. 2000).

Plaintiff states that he was deprived of his right to freely exercise his religion when he was not allowed to administer Communion to the prisoners. The First Amendment of the United States Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." (U.S. Const. amend. I). The right to free exercise of religion "includes the right to engage in conduct that is motivated by the religious beliefs held by the individual asserting the claim." *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 255–56 (6th Cir. 2015) (citing *Prater v. City of Burnside*, 289 F.3d 417, 427 (6th Cir. 2002)). The government cannot prohibit an individual from participating in religious conduct or acts that are protected by the First Amendment. *Id.* Additionally, it is well-settled that this First Amendment right extends to prisoners, and that prisoners must be given reasonable opportunities to practice their religion. *Howes v. Bragg*, No. 1:23-CV-00023, 2023 WL 3204014, at *3 (M.D. Tenn. May 2, 2023) (citing *Hudson v. Palmer*, 468 U.S. 517, 523 (1984)). However, while prisoners have certain First

Amendment rights, it does not mean that these rights are without limitations and restrictions. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

"A prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citing *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010)) (internal quotation marks omitted). After a prisoner establishes a sincerely held religious belief, "the court move[s] on to determining whether the prison's actions restricting the practice are valid." *Id.* (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).

However, Plaintiff does not point to, and the Court is not aware of, any case law or statutory authority to support the claim that *volunteer chaplains* have a constitutional right to administer religious services in prisons. Instead, in a Section 1983 case, the Sixth Circuit held that a volunteer chaplain's "right to conduct services in the prison chapel was a privilege created by the state." *Phelps v. Dunn*, 965 F.2d 93, 102 (6th Cir. 1992).[3] By implication then, the right to conduct services in the prison is not a constitutional right. Therefore, Plaintiff does not allege a viable infringement of his constitutional rights.

A second issue with Plaintiff's complaint is that his free exercise claim rests on the *prisoners'* inability to access Holy Communion due to the alleged actions of the Hamilton County Jail staff, not his own inability to access Holy Communion or otherwise practice his faith. The Free

---

[3] In *Phelps*, an inmate sued the volunteer chaplain for a § 1983 violation. 965 F.2d at 96-97. The parties claimed that the district court "granted summary judgment . . . on the ground that Phelps could not bring a § 1983 action against [the volunteer chaplain] because he was not a state actor." *Id.* at 101. The Sixth Circuit found that the district court had not granted summary judgment on that ground, but that if it had, it would have been incorrect to do so. *Id.* at 101-02. As part of the analysis on potential state actor issue, the Sixth Circuit specifically noted that the privilege of conducting services at the prison was created by the state. *Id.*

7

Exercise Clause protects one's ability to practice their religion, not one's ability to administer Communion in a jail (with all of its attendant security concerns) or engage in ministry for others.

Even if the Free Exercise Clause did protect one's ability to engage in ministry in a jail, Plaintiff's claim would still fail. Courts have found causes of action in cases where a prisoner was denied access to their religious advisor, *Cruz v. Beto*, 405 U.S. 319 (1972); where a prisoner was not allowed to purchase certain religious publications due to his religion, which was a privilege afforded to prisoners of a different religion, *Cooper v. Pate*, 378 U.S. 546 (1964); where a prison did not allow prisoners to celebrate Passover, *Whitney v. Brown*, 882 F.2d 1068, 1073 (6th Cir. 1989); and where a prison did not allow prisoners to participate in Eid,[4] *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019). However, in the instant case, Plaintiff does not argue that the prisoners have been denied access to practice their religion, or that the jail allowed volunteer chaplains of other religions to freely minister and administer Communion, while denying Plaintiff access. *See Thompson v. Com. of Ky.*, 712 F.2d 1078, 1080 (6th Cir. 1983) (finding that the prisoners' claim failed because they did not "claim that they have been denied the opportunity to practice their religion or that they have incurred punishment for doing so"). Plaintiff only states that *he* was not allowed to engage in ministry at the Hamilton County Jail. It is plausible that other chaplains of the same religion are allowed to engage in ministry, administer Holy Communion, and provide the prisoners access to that religion. Plaintiff, of course, is free to engage in ministry and administer Holy Communion in other places that are not the Hamilton County Jail. Plaintiff, however, does not have a right to engage in ministry and administer Holy Communion specifically in the Hamilton County Jail.

---

[4] A Muslim religious observance marking the end of Ramadan ("Eid al-Fitr") or the Hajj pilgrimage ("Eid al-Adha").

Even accepting all well-pleaded factual allegations as true and construing the complaint with the required liberality for pro se pleadings, Plaintiff does not show that he was deprived of his right to freely exercise his religion. Consequently, his complaint does not survive screening for a Section 1983 claim.

### 2. Religious Land Use and Institutionalized Persons Act

Plaintiff claims that Defendants violated RLUIPA because there is no place for him in the Hamilton County Jail to administer Communion. In relevant part, RLUIPA provides that:

> [n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> A. is in furtherance of a compelling governmental interest; and
>
> B. is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). Stated differently, RLUIPA protects land use as religious exercise by limiting government's ability to impose a land use regulation that imposes a substantial burden on religious exercise. *Id.* RLUIPA defines land use regulation as a zoning or landmarking law that "limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." *Id.* at § 2000cc–5(5). The Sixth Circuit has found that "not just any imposition on religious exercise will constitute a violation of RLUIPA[,]" but rather, it must have "some degree of severity to be considered substantial." *Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1003 (6th Cir. 2017) (internal quotation marks omitted).

9

Plaintiff appears to be alleging that Defendants violated RLUIPA because there was no physical space for Plaintiff to administer Communion, and he and the prisoners were entitled to a space. However, Plaintiff does not point to any land use regulation that is burdening religious exercise—his only allegation is that Defendants stated there was no place for him to minister and administer Communion to the prisoners. Further, Plaintiff does not have a property interest (i.e., an "ownership, leasehold, easement, servitude, or other property interest" [*Id.*] in Hamilton County Jail. Consequently, Plaintiff could not have been limited by a land use regulation as required by § 2000cc. *See Prater v. City of Burnside, Ky.*, 289 F.3d 417, 434 (6th Cir. 2002) ("[A] government agency implements a land use regulation only when it acts pursuant to a zoning or landmarking law that limits the manner in which a claimant may develop or use property in which the claimant has an interest") (internal quotation marks omitted). Accordingly, RLUIPA is inapplicable to the factual circumstances in the present case.

3. **Deprivation of Rights under Color of Law**

Plaintiff also claims that Defendants deprived him of his rights under color of law, pursuant to 18 U.S.C. § 242. However, 18 U.S.C. § 242 is a federal criminal statute, and "criminal statutes generally do not create private causes of action." *Young v. Overly*, No. 17-6242, 2018 WL 5311408, at *2 (6th Cir. July 2, 2018). Specifically, 18 U.S.C. § 242 does not create a private cause of action for Plaintiff. *See id.* Thus, Plaintiff's complaint does not survive screening under 18 U.S.C. § 242.

## V. Conclusion

For the reasons stated herein, Plaintiff does not state a claim upon which relief can be granted. It is, therefore, **RECOMMENDED**[5] that this action be **DISMISSED** without prejudice.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).